[No. B265069. Second Dist., Div. One. Mar. 8, 2017.]

MITCHELL J. STEIN, Plaintiff and Appellant, v.
AXIS INSURANCE COMPANY et al., Defendants and Respondents.

## COUNSEL

Law Offices of James N. Fiedler and James N. Fiedler for Plaintiff and Appellant.

Bowman and Brooke, Julian G. Senior, Marion V. Mauch; BatesCarey, Ommid C. Farashahi, Michael T. Skoglund and Tiffany Saltzman-Jones for Defendants and Respondents AXIS Insurance Company and AXIS Capital Holdings Limited.

Drinker Biddle & Reath, William A. Hanssen; Shipman & Goodwin and Joseph A. Bailey III for Defendants and Respondents HCC Global Financial Products, LLC, HCC Insurance Holdings, Inc., and Houston Casualty Company.

## OPINION

**CHANEY, J.**—In 2007, Heart Tronics, Inc., a medical device company, purchased directors and officers liability insurance policies from AXIS Insurance Company (AXIS) and Houston Casualty Company (HCC). The AXIS policy has been exhausted.

Under the HCC policy, HCC agreed to pay defense expenses incurred by Heart Tronics' officers and directors, and individuals serving in functionally equivalent capacities, in any criminal or civil proceedings, including appeals. An exclusion provided that upon final determination that an insured person committed willful misconduct, the insured would be obligated to repay the insurer any defense expenses paid on his or her behalf.

Mitchell J. Stein served Heart Tronics as a de facto officer, managing the company full time without pay or formal position or title. In 2013, Stein was convicted of securities fraud in federal court. He tendered his appeal of that conviction to HCC, but HCC denied coverage, in part because it considered the conviction to be a "final determination" of Stein's willful misconduct for purposes of the policy exclusion, notwithstanding the policy's express coverage of defense expenses on appeal. Stein's conviction was affirmed on appeal, but a motion for rehearing is currently pending.

Stein sued HCC, alleging it defrauded him and breached the 2007 policy by failing to pay his litigation expenses on appeal. Stein also sued AXIS, alleging it conspired with HCC to defraud him. The superior court sustained the insurers' demurrers without leave to amend on several grounds and dismissed the case.

We conclude the AXIS demurrer was properly sustained because AXIS was a stranger to the HCC policy and owed no duties connected with it. The HCC demurrer was improperly sustained because when a policy expressly provides coverage for litigation expenses on appeal, an exclusion requiring repayment to the insurer upon a "final determination" of the insured's culpability applies only after the insured's direct appeals have been exhausted. Therefore, we reverse the trial court's judgment in part and affirm it in part.

## BACKGROUND

We take the facts from the operative first amended complaint and from matters properly subject to judicial notice.

Heart Tronics, Inc., formerly Signalife Inc. (we will refer to them interchangeably), developed and manufactured an electrocardiograph monitor called the Fidelity 100. Stein was a founder of Heart Tronics, and by 2007 functioned as its outside general counsel and also what he calls its "chief creative architect," managing the company on a full-time, daily basis without pay, formal position or title.

In November 2007, Stein and Lowell Harmison, CEO of Heart Tronics, purchased a $5 million directors and officers (D&O) liability insurance policy from HCC.

### 1. *Original HCC Policy Draft*

As originally offered, the HCC policy provided that HCC agreed to "pay, on behalf of the Insured Persons, Loss from Claims first made during the Policy Period," November 13, 2007, to November 13, 2008.[1]

### a. *Original Definitions*

"Loss" was defined as "any amount, including Defense Expenses, which an Insured Person is obligated to pay as a result of a Claim . . . ."

"Defense expenses" included "reasonable legal fees . . . incurred . . . in defense of a Claim."

---

[1] We omit boldface from all policy excerpts.

"Insured person" meant "any past, present or future director or officer of" Signalife.

"Claim" meant "written notice received by an Insured Person or the Company that any person or entity intends to hold an Insured Person responsible for a Wrongful Act, including . . . a legal, injunctive or administrative proceeding . . . ."

"Wrongful act" meant "any actual or alleged act . . . or breach of duty by an Insured Person in his or her capacity as" a "director or officer" of Signalife.

### b. *Original Exclusions III(A)(3) and III(B)*

HCC Policy Exclusion III(A)(3) (the Willful Misconduct Exclusion) excluded payment for loss in connection with any claim arising from "any dishonest or fraudulent . . . or . . . criminal act . . . or any willful violation of any statute . . . by an Insured Person," but did not exclude payment for defense expenses, provided that a final determination that the insured person committed the wrongful act would obligate him or her to repay the defense expenses.

Exclusion III(B) (the Bodily Injury Exclusion) excluded payment for defense expenses altogether if the claim involved bodily injury.[2]

### 2. *Amended HCC Policy*

Stein and Harmison were dissatisfied with the offered HCC policy because it failed to cover criminal matters or individuals such as Stein, who had no formal title but was extensively involved in Signalife operations. On December 18, 2007, they met with HCC agents Paul Chambers and Lindsay McLeroy, who offered an amended policy that extended coverage to defense costs for criminal matters—from the initial filing of charges to final appeal—and to any individual serving Signalife as the "functional equivalent" of an officer or director. Chambers and McLeroy represented to Stein and Harmison that the amended policy "absolutely" covered Stein as a de facto officer of Signalife.

### a. *Amended Definitions*

In the amended policy, the definition of "claim" was expanded to include any civil or criminal proceeding "commenced by the service of a complaint

---

[2] Exclusion III(B) provided, in pertinent part, the following: "The Insurer will not pay Loss, including Defense Expenses, in connection with any Claim . . . for bodily injury, sickness, disease or death of any person, or for damage to or destruction of any tangible property . . . ."

or similar document, the filing of a notice of charges or formal investigative order, or the return of an indictment or information, including an appeal from any such proceeding."

"Wrongful act" was redefined to include an act committed not only by an insured person in his or her capacity as a director or officer of Signalife, but also an insured person acting in his or her capacity as the "functional equivalent" of an officer or director. As redefined, "wrongful act" meant "any actual or alleged act . . . or breach of duty by an Insured Person," and "insured person" was expanded to include not only officers and directors, but any person "serving . . . in a position functionally equivalent" to an officer or director.

b. *Amended Exclusion III(A)(3)*

The Willful Misconduct Exclusion was amended to provide, in pertinent part, that "Except for Defense Expenses, the Insurer shall not pay Loss in connection with any Claim" occasioned by willful misconduct. The exclusion would be invoked "only if there has been . . . a final adjudication adverse to [the] Insured Person in the underlying action . . . establishing that the Insured Person" committed willful misconduct. "If it is finally determined that [the exclusion] applies," the insured would be obligated to repay the insurer any defense expenses paid on his or her behalf.[3]

---

[3] Section III(A)(3) provides: "Except for Defense Expenses, the Insurer shall not pay Loss in connection with any Claim: [¶] . . . [¶]

"(3) brought about or contributed to by any dishonest or fraudulent act or omission or any deliberately criminal act or omission or any willful violation of any statute, rule or law by an Insured Person, or by an Insured Person gaining any personal profit, remuneration or advantage to which he or she was not legally entitled; provided, that:

"(a) This Section III. Exclusion (A)(3) shall apply only if there has been:

"(i) a final adjudication adverse to such Insured Person in the underlying action or proceeding or in any separate action or proceeding, or

"(ii) a written admission by such Insured Person, "establishing that the Insured Person so acted or gained such a profit, remuneration or advantage;

"(b) For purposes of determining the applicability of this exclusion, no Wrongful Act of any Insured Person shall be imputed to any other Insured Person, and the existence of allegations in a Claim which, if proven, would be subject to this section III . . . Exclusion (A)(3) shall not affect the right of the Insured Person to the current payment of Defense Expenses; and

"(c) If it is finally determined that this section III . . . Exclusion (A)(3) applies to any Claim against an Insured Person, such Insured Person will repay the Insurer any Defense Expenses paid on his or her behalf in connection with such Claim."

### 3. *Criminal Proceedings*

On December 13, 2011, a federal grand jury indicted Stein on 14 counts of mail, wire, and securities fraud; money laundering; and obstruction of justice. The grand jury charged that Stein, whose wife nominally owned a limited liability company that owned 85 percent of Signalife, misappropriated Signalife's assets, testified falsely to the United States Securities and Exchange Commission (SEC) to conceal his conduct, and engaged in a "pump and dump" scheme wherein he artificially inflated the company's stock and concealed his ownership and trading of the shares. On May 20, 2013, a jury found Stein guilty on all counts, and he was sentenced to 17 years in prison and ordered to forfeit over $5 million. Stein appealed the judgment, and in January 2017 the Eleventh Circuit affirmed his conviction but vacated the sentence and remanded the matter for resentencing. (*U.S. v. Stein* (11th Cir. 2017) 846 F.3d 1135, 1156.) On February 7, 2017, Stein moved for panel or en banc rehearing before the Eleventh Circuit.

### 4. *SEC Action*

On December 20, 2011, the SEC filed a civil action against Stein and Heart Tronics, alleging securities fraud and falsification of records. The SEC alleged Stein "was a de facto officer" of Heart Tronics, "in that he performed policy-making functions for Heart Tronics akin to an officer." On February 18, 2015, the district court granted summary judgment to the SEC, finding no triable issue existed as to Stein's securities fraud, and ordered Stein to disgorge $5,378,581.61 in illegally gained profits.

### 5. *Tender to HCC*

After his criminal conviction, Stein tendered his appeal to HCC. HCC denied coverage on the ground that Stein was not the "functional equivalent" of a Heart Tronics officer.

### 6. *Complaint and HCC Demurrer*

On June 25, 2014, Stein and Heart Tronics sued HCC Insurance Holdings, Inc., and in the first amended complaint named as additional defendants HCC, HCC Insurance Holdings Group, and HCC Global Financial Products, LLC.[4] Plaintiffs asserted in the first amended complaint causes of action for

---

[4] HCC Insurance Holdings Group has never appeared in this action and appears not to exist. Plaintiffs alleged the remaining three HCC defendants "are alter egos of one another such that it would work an injustice to give them any legal *indica* [*sic*] of separateness, because any separateness among them has ceased to exist. These entities mix and replace one at the whim of the other for virtually all business purposes such as sending legal notices and conducting

fraud, breach of contract, breach of the covenant of good faith and fair dealing, and unfair competition, alleging Stein was the functional equivalent of a Signalife officer or director, and HCC breached the HCC policy by refusing to pay his defense expenses in the SEC and criminal matters. Plaintiffs alleged Chambers and McLeroy were given express authority by HCC to represent it in negotiations, and they represented to Stein and Harmison that Stein was "absolutely" covered under the HCC policy, knowing at the time that the representation was false. Plaintiffs sought damages and an injunction enjoining defendants from making any payment under the HCC policy until they first paid Heart Tronics and Stein.

HCC, HCC Global Financial Products, and HCC Insurance Holdings, Inc., demurred to the first amended complaint, contending Stein was not an insured person under the HCC policy and his defense expenses incurred in the SEC and criminal proceedings did not constitute losses under the policy.

The HCC defendants argued that under the sham pleading doctrine, Stein was estopped from asserting that he was a de facto officer of Heart Tronics because he repeatedly took contrary factual positions in prior proceedings. In support of the argument, defendants sought judicial notice of several prior proceedings that purported to show Stein (1) denied in the SEC action that he was a de facto officer of Heart Tronics; (2) represented to the district court in the criminal proceeding that he ceased serving as the company's chief creative architect before 2005; (3) represented in proceedings in 2006 that he had never held any official position with Heart Tronics; and (4) represented in other proceedings that he was not a Heart Tronics officer or director and did not control the company. Even if Stein was the functional equivalent of a Heart Tronics officer, the HCC policy did not cover his defense expenses in the SEC and criminal proceedings because in those proceedings he was accused of misconduct unrelated to any service to the company. Instead, he was accused of fraud and obstruction of justice committed in his personal capacity as a witness, lawyer, or husband of the majority owner. In any event, defendants argued, HCC Insurance Holdings Group was not a proper defendant because no such entity existed, and HCC Global Financial Products and HCC Insurance Holdings, Inc., were improper defendants because they were not parties to the HCC policy.

Defendants further demurred to plaintiffs' cause of action for fraud on the ground that the action was barred by the applicable limitations period, the

financial and business transactions." HCC Global Financial Products and HCC Insurance Holdings, Inc., demurred on the ground that they cannot be held liable for breach of a contract to which they were not parties. The trial court sustained the demurrer, concluding plaintiffs' alter ego allegations were conclusory and insufficient. On appeal, plaintiffs do not ascribe error to this ground for the court's ruling. Therefore, we conclude the demurrer was properly sustained as to HCC Global Financial Products and HCC Insurance Holdings, Inc.

first amended complaint failed to allege facts supporting fraudulent intent, and the complaint failed to allege facts showing Chambers and McLeroy were HCC's agents.

In opposition to the HCC demurrer, plaintiffs argued Stein was covered under the HCC policy because the SEC complaint specifically alleged he was a de facto officer of Heart Tronics. Plaintiffs argued all factual allegations sufficed to state causes of action, and the fraud action was not time-barred because plaintiffs did not discover HCC's fraud until it denied coverage.

The trial court sustained the demurrer without leave to amend on the grounds that (1) the sham pleading doctrine precluded Stein from alleging he was a de facto officer of Heart Tronics because in other litigation he asserted the opposite; (2) coverage was precluded under the Willful Misconduct Exclusion because Stein's criminal conviction was "final under federal law until it is reversed"; (3) HCC Global Financial Products and HCC Insurance Holdings, Inc., were not parties to the HCC policy; (4) plaintiffs could not state a cause of action for fraud because they alleged only that HCC failed to perform a promise, not that its representations concerning coverage were false at the time they were made; and (5) plaintiffs' cause of action for fraud was barred by the applicable limitations period because they should have discovered HCC's alleged fraud in 2007, when the HCC policy was delivered.

7. *AXIS Insurance Company and AXIS Capital Holdings Limited*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

8. *Appeal*

Stein (but not Heart Tronics) appealed from the resulting judgment.

## DISCUSSION

I. *Standard of Review*

When a demurrer is sustained, we review the complaint de novo to determine whether it alleges facts stating a cause of action under any legal theory. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 [96 Cal.Rptr.2d 354].) We accept as true all properly pleaded material facts, but not contentions, deductions, or conclusions. (*Id.* at pp. 42–43.) "[W]hen [a demurrer] is sustained without leave to amend, we decide

[*]See footnote, *ante*, page 673.

whether there is a reasonable possibility that the defect can be cured by amendment . . . ." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) A plaintiff has the burden to show what facts could be pleaded to cure defects in the complaint. (*Total Call Internat., Inc. v. Peerless Ins. Co.* (2010) 181 Cal.App.4th 161, 166 [104 Cal.Rptr.3d 319].) To meet this burden on appeal, the plaintiff must enumerate the facts and demonstrate how they establish a cause of action. (*Ibid.*) "On appeal from a judgment of dismissal entered after a demurrer has been sustained without leave to amend, unless failure to grant leave to amend was an abuse of discretion, the appellate court must affirm the judgment if it is correct on any theory." (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1].)

## II.   *HCC Defendants' Demurrer*

### A.   *Breach of the HCC Policy—Willful Misconduct Exclusion*

Apparently relying on an exclusion in the HCC policy requiring an insured to repay defense expenses if it has been "finally determined" the insured committed willful misconduct, the trial court sustained HCC's demurrer to plaintiffs' cause of action for breach of contract on the ground that Stein's expenses on appeal were not covered under the policy because his criminal conviction was "final . . . until it is reversed." The court erred.

■   " ' "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." [Citations.]   ■   "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." [Citation.] "Such intent is to be inferred, if possible, solely from the written provisions of the contract." [Citation.] "If contractual language is clear and explicit, it governs." [Citation.]' [Citation.] [¶]   ■   ' "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." [Citations.] The fact that a term is not defined in the policies does not make it ambiguous. [Citations.] Nor does "[d]isagreement concerning the meaning of a phrase," or " 'the fact that a word or phrase isolated from its context is susceptible of more than one meaning.' " [Citation.] " '[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.' " [Citation.]   ■   "If an asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." [Citation.]' " (*Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390–391 [33 Cal.Rptr.3d 562, 118 P.3d 589].)

The HCC policy provided coverage for "loss," which the policy defined as "any amount," including defense expenses, the insured would be obligated to pay as the result of a claim. "Claim" included any civil or criminal proceeding, and expressly included "an appeal from any such proceeding." Although the Willful Misconduct Exclusion removed coverage for losses brought about by fraud or criminal acts, the exclusion did not apply to defense expenses: "*Except for Defense Expenses*, the Insurer shall not pay Loss in connection with any Claim [brought about by fraud]." (Italics added.) The policy language therefore clearly and explicitly obligated HCC to cover an insured's defense expenses incurred as a result of an appeal from a civil or criminal proceeding even if a trial court determined the insured was guilty of or liable for fraud.

This coverage is further supported by the fact that when the parties wished to exclude defense expenses from coverage, they did so explicitly. Exclusion III(B) excludes payment for defense expenses if a claim involves bodily injury, as follows: "The Insurer will not pay Loss, including Defense Expenses, in connection with any Claim . . . for bodily injury, sickness, disease or death of any person, or for damage to or destruction of any tangible property . . . ." That Exclusion (III)(A) did not explicitly exclude defense expenses on appeal implies the parties did not wish it to do so.

HCC argues the Willful Misconduct Exclusion, which becomes operative once there has been a "final adjudication" of fraud, precludes coverage here because a federal trial court judgment such as Stein's criminal conviction is a final adjudication for policy purposes. This is so, HCC argues, because under federal law, a trial court judgment is deemed to be a final adjudication until reversed on appeal. The argument suffers many fatal flaws.

■ First, nothing in the policy indicates the parties intended that the phrase "final adjudication" carry the same meaning in the exclusion as it carries in federal law. Policy language is construed in the context of the policy as a whole and the circumstances of the case, not by reference to abstract concepts cherry picked from outside factors. (*Powerine Oil Co. v. Superior Court, supra*, 37 Cal.4th at p. 391.) The policy made no mention of federal law and no distinction between federal and state court proceedings. That Stein's conviction happened to be in federal court was irrelevant to the policy.

Second, even under federal law, an adjudication that is "final until reversed" is not final for all purposes. (See *Martin v. Martin* (1970) 2 Cal.3d 752, 761 [87 Cal.Rptr. 526, 470 P.2d 662] [under federal law, a trial court judgment is final for purposes of res judicata but may still be appealed].) An appellate ruling is as much an "adjudication" as a trial court judgment, with greater finality.

Third, even if HCC were correct that the Willful Misconduct Exclusion comes into play when a final adjudication determines culpability, the point is irrelevant because the exclusion by its terms does not apply to defense expenses.

HCC represents that "[c]ourts have repeatedly held that the exhaustion of all appeals is unnecessary to satisfy exclusions that require a 'final adjudication.' " HCC cites two trial court cases for this "repeated" holding, *Unencumbered Assets v. Great American Ins. Co.* (S.D. Ohio 2011) 817 F.Supp.2d 1014 and *Chubb Custom Ins. Co. v. Triumph Capital Group, Inc.* (Super. Ct. 2007) 22 Mass.L.Rep. 192, but each undermines rather than supports HCC's point. In each case, the policy at issue provided that a " '*judgment or other* final adjudication' " would trigger a dishonesty exclusion. (*Unencumbered Assets, supra,* at p. 1033, italics added; *Triumph, supra,* at p. 193, italics added.) Each court treated this phrase as disjunctive, and held that the occurrence of either disjunct—for example, a judgment—would alone suffice to trigger the dishonesty exclusion. (*Unencumbered Assets, supra,* at p. 1032; *Triumph, supra,* at p. 194 ["the phrase 'judgment or other final adjudication' is disjunctive, so a judgment of conviction would still be sufficient by itself to bar coverage even if it were not a final adjudication"].) The HCC policy is not disjunctive—there is only one trigger for the Willful Misconduct Exclusion: final adjudication. If anything, this implies a judgment alone would not trigger the exclusion.

■ We conclude the HCC policy covers an insured's litigation expenses incurred in directly appealing a conviction. (See *Mid-Century Ins. Co. v. Superior Court* (2006) 138 Cal.App.4th 769, 775 [41 Cal.Rptr.3d 833] [an action is deemed to be pending until HCC's final determination upon direct appeal].) Plaintiffs alleged HCC breached the policy by denying coverage for these expenses. Therefore, HCC's demurrer on the ground that Stein's criminal conviction precluded coverage should have been overruled.

**B.–E.**\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III. *AXIS Defendants' Demurrer*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

\*See footnote, *ante,* page 673.

## IV. *Leave to Amend*

■ To be granted leave to amend, a plaintiff "must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 890 [6 Cal.Rptr.2d 151].) Here, plaintiffs argue they should have been given leave to amend to allege more clearly that the HCC policy "belie[s] the insurers' positions" or to "more specifically allege" conspiracy. Plaintiffs offered no amended complaint below, and on appeal adduce no specific facts they could allege to cure the complaint as to the AXIS defendants. Therefore, leave to amend as to the AXIS defendants was properly denied.

## V. *Requests for Judicial Notice*

HCC's request for judicial notice of the Eleventh Circuit's opinion affirming Stein's conviction but vacating his sentence and remanding for resentencing is granted. (Evid. Code, § 452, subd. (d).) Stein's request for judicial notice of his petition for rehearing before the Eleventh Circuit is also granted. (*Ibid.*) Stein's other requests for judicial notice are denied as calling for notice of irrelevant material. (See *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1141, fn. 6 [119 Cal.Rptr.2d 709, 45 P.3d 1171].)

## DISPOSITION

The judgment is affirmed as to Heart Tronics, HCC Global Financial Products, HCC Insurance Holdings, Inc., and the AXIS defendants. The judgment is reversed as to Stein's complaint against HCC. The AXIS defendants, HCC Global Financial Products, and HCC Insurance Holdings, Inc., are to recover their costs on appeal. Stein and HCC are to bear their own costs.

Rothschild, P. J., and Johnson, J., concurred.

On April 6, 2017, the opinion was modified to read as printed above.